UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MONROE H.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 1:21-cv-03022-MJD-JPH |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant Monroe H. applied for disability insurance benefits ("DIB") from the Social Security Administration ("SSA") on February 12, 2019, alleging an onset date of December 26, 2018. [Dkt. 7-2 at 16.] His application was initially denied on May 8, 2019, [Dkt. 7-4 at 7], and upon reconsideration on June 18, 2019, [Dkt. 7-4 at 17]. Administrative Law Judge Shelette Veal ("ALJ") conducted a hearing on April 13, 2021. [Dkt. 7-2 at 29-60.] The ALJ issued a decision on April 21, 2021, concluding that Claimant was not entitled to receive benefits. [Dkt. 7-2 at 13-24.] The Appeals Council denied review on October 8, 2021. [Dkt. 7-2 at 2.] On December 10, 2021, Claimant timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. §§ 405(g) and 1383(c). [Dkt. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

# I. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. For the purpose of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ

does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). A remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II. BACKGROUND

Claimant was 49 years old when his alleged disability began. [Dkt. 7-6 at 38.] He has earned a bachelor's degree.[2] [Dkt. 7-2 at 37; Dkt. 7-7 at 7.][3]

The ALJ followed the five-step sequential evaluation in 20 C.F.R. § 404.1520(a)(4) and concluded that Claimant was not disabled. [Dkt. 7-2 at 23-24.] Specifically, the ALJ found as follows:

- At Step One, Claimant had not engaged in substantial gainful activity[4] since December 26, 2018, the alleged onset date. [Dkt. 7-2 at 18.]

- At Step Two, he had "the following severe impairments: bilateral hip degenerative joint disease status post left hip replacement, obstructive sleep apnea, diabetes, neuropathy, bilateral knee degenerative joint disease, and obesity." [Dkt. 7-2 at 18 (citation omitted).]

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Dkt. 7-2 at 19.]

- After Step Three but before Step Four, Claimant had the RFC "to perform light work as defined in 20 CFR 404.1567(b) except after standing for 30 minutes, he must be allowed to sit for 30 minutes and alternate throughout the 8-hour workday. Occasional climbing of ramps or stairs; never climbing ladders, ropes, or scaffolds; occasional balancing on level surfaces; and occasional stooping, kneeling, crouching, and crawling. He must

---

[2] The record does not disclose the field of study.

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

avoid concentrated exposure to extreme cold, moving mechanical parts, and unprotected heights." [Dkt. 7-2 at 19.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Claimant's RFC, he could not perform any of his past relevant work as a patient transporter, lot attendant, and detailer. [Dkt. 7-2 at 22.]

- At Step Five, relying on the VE's testimony and considering Claimant's age, education, work experience, and RFC, he could perform other work with jobs existing in significant numbers in the national economy in representative occupations like a collator operator, router, and laboratory sample carrier. [Dkt. 7-2 at 22-23.]

### III. DISCUSSION

Claimant asserts two errors, arguing that: (1) the ALJ relied on the stale assessments of the state agency reviewing consultants and her own interpretation of updated evidence that demonstrated that his hip impairment had worsened; and (2) 106,700 jobs in the national economy is not a significant number of jobs. The Court will address the arguments as necessary to resolve the appeal.

**A. Left Total Hip Replacement**

The ALJ found that the state agency reviewing consultants' assessments that Claimant could perform a range of light exertional work were "persuasive." [Dkt. 7-2 at 22.] The most recent of the verbatim prior administrative medical findings of the consultants was made on June 18, 2019. [Dkt. 7-3 at 18.] The consultant's assessment included that Claimant could lift and carry 20 pounds occasionally, lift and carry 10 pounds frequently, stand and walk about six hours in an eight-hour workday, and sit about six hours in a workday. [Dkt. 7-3 at 16-17.] The ALJ explained:

> [The consultants' assessments] are generally consistent with, and supported by, the substantial evidence of record discussed in th[e] decision, such as the generally largely negative findings from physical exams and the claimant's activities of daily living, but such evidence supports the sit/stand option described in the residual functional capacity above. For example, at a medical appointment in March 2020, the claimant reported doing well with minimal use of pain

5

>medication "usually"; physical exam findings were largely negative and included alertness, a pleasant demeanor, no sensory loss or focal weakness, no acute distress, trace edema in the bilateral ankles, and no musculoskeletal deformity or swelling.

[Dkt. 7-2 at 22.]  The "sit/stand option" that the ALJ referenced was the additional limitation that she added to Claimant's RFC that he must be allowed to alternate between standing and sitting for 30 minutes each throughout the workday.

The Seventh Circuit has explained that "[a]n ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where a later diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment") (additional citation omitted)).  The Seventh Circuit has also "said repeatedly that an ALJ may not 'play[] doctor' and interpret 'new and potentially decisive medical evidence' without medical scrutiny." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (quoting *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (ruling that the ALJ erred in failing to submit the claimant's first MRI in 11 years to medical scrutiny and in interpreting the results himself).  "An ALJ may not conclude, without medical input, that a claimant's most recent MRI results are 'consistent' with the ALJ's conclusions about [his] impairments." *McHenry*, 911 F. 3d at 871 (quoting *Akin v. Berryhill,* 887 F.3d 314, 317-18 (7th Cir. 2018)).

On December 19, 2018, an x-ray of Claimant's left hip showed moderate joint space narrowing and spurring consistent with osteoarthritis.  [Dkt. 7-10 at 75-76.]  On May 13, 2019, Claimant had a follow-up visit for treatment of left hip pain and he reported that a corticosteroid injection in February 2019 had "provided approximately 70% relief" until the week before, his

pain was still better, but the pain was returning and aggravated by walking. [Dkt. 7-10 at 73.] He reported that he had to reduce his hours working at the airport to part-time due to his pain. *Id*. On examination, his gait was antalgic favoring his left lower extremity, and there were positive relevant clinical signs of hip dysfunction on the left. [Dkt. 7-10 at 75.] Claimant's treating physician advised him that he did not recommend corticosteroid injections more than twice per year. [Dkt. 7-10 at 77.] Claimant reported that his pain was too intense to wait another three months for the next injection, and his provider discussed other options including a viscosupplementation injection.[5] [Dkt. 7-10 at 76.] At the reconsideration phase, the consultant considered this evidence, including the x-ray imaging showing moderate degenerative joint disease in Claimant's left hip. [Dkt. 7-3 at 18.]

    Following the last consultant review, Claimant visited the emergency room on January 15, 2020. [Dkt. 7-12 at 68.] He reported that his left hip pain was worsening, and he had taken off work that day "because the pain was too much." *Id*. On January 17, 2020, an x-ray was taken of Claimant's hips that showed severe arthritic changes in the left hip that had "progressed" when compared with the previous study. [Dkt. 7-12 at 2.] Claimant's treating provider explained that he had "tried nonsteroidal anti-inflammatories and multiple corticosteroid injections. These worked initially very well but recently have not provided medical relief. He has pain every day." [Dkt. 7-12 at 18.] On examination, Claimant walked with an antalgic gait,

---

[5] Viscosupplementation treatment for osteoarthritis is when hyaluronic acid that serves as a lubricant and shock absorber for a joint's cartilage cap is replaced by injection. *Viscosupplementation Treatment for Arthritis*, Johns Hopkins, https://www.hopkinsmedicine.org/health/conditions-and-diseases/arthritis/viscosupplementation-treatment-for-arthritis (last visited October 4, 2022).

had reduced range of motion in his left hip, and positive relevant clinical signs. *Id*. His treating physician's impression was "end-stage osteoarthritis of the left hip." [Dkt. 7-12 at 19.] On July 14, 2020, Claimant had left total hip replacement surgery. [Dkt. 7-54 at 6.] The surgeon recorded that "[t]he intraoperative finding confirmed the clinical and radiographic finding of end-stage osteoarthritis characterized by complete bone loss on the femoral headland acetabulum with [the] presence of osteophytes." [Dkt. 7-54 at 2.] The updated evidence of Claimant's left total hip arthroplasty and demonstrating the progression of his osteoarthritis was not submitted to expert scrutiny.

In *Stage*, the Seventh Circuit held that new evidence that a claimant needed a total hip replacement had changed the picture enough to require further expert scrutiny. 812 F.3d at 1125. The Commissioner argues that the ALJ's reliance on her own assessment of the updated medical evidence is harmless because she demonstrated reasoned consideration of the record by assessing an RFC that was more restrictive than any medical assessment, and she relied on other evidence besides the consultants' assessments that Claimant's hip replacement surgery was successful, including his testimony about his activities. [Dkt. 17 at 4-7.] The SSA's guidance explains that individuals may subjectively experience pain differently even with the same objective severity demonstrated by diagnostic imaging. *See* Social Security Ruling ("SSR") 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *4. Accordingly, to evaluate prejudice, the Court must also consider whether objective diagnostic evidence that was not submitted to expert scrutiny is "corroborated by other evidence" supportive of additional functional limitations. *See Kemplen v. Saul*, 844 F. App'x 883, 887 (7th Cir. 2021), *as amended on reh'g in part* (June 21, 2021).

The ALJ explained that "[a]t a postoperative follow-up appointment in August 2020, the claimant reported that he was doing well and felt better overall compared to before the surgery;

8

he reported using a cane sometimes but did not walk into the clinic with it." [Dkt. 7-2 at 21] (citation omitted).] The ALJ also explained that Claimant started working about twenty hours per week as a dishwasher in September 2020, and he testified that he did not use his cane but kept it in his car "just in case." *Id*. On August 10, 2020, Claimant reported to his orthopedic surgeon that he was "[d]oing well. States he has a cane and uses sometimes but didn't walk into [the] clinic with it. Feels he is better overall compared to before surgery." [Dkt. 7-27 at 6.] His provider advised him to use the cane or a walker if he had issues with pain or limping. [Dkt. 7-27 at 7.] On January 14, 2021, Claimant reported to his primary care physician that his chief complaint was chronic hip and knee pain, and he was taking hydrocodone "intermittently." [Dkt. 7-25 at 2.]

      Claimant testified that he worked three consecutive days as a dishwasher for a total of twenty hours a week, he had been asked to work a fourth day, but he knew there was "no way" that he could do it. [Dkt. 7-2 at 36.] He also testified that after about the fourth hour of his shift, his hip pain "gets to be a little too much to deal with." *Id*. He testified further that his usual pain was "about seven," the pain was "[g]etting worse," and he will need to have another hip surgery. [Dkt. 7-2 at 40.] An x-ray of Claimant's hip—that was not submitted to expert scrutiny—also showed that he had "mild-to-moderate arthritic changes in the right hip." [Dkt. 7-12 at 2.] The ALJ found that Claimant's part-time work activity as a dishwasher was not substantial gainful activity. [Dkt. 7-2 at 18.] And the Seventh Circuit has "cautioned ALJs not to draw conclusions about a claimant's ability to work full time based on part-time employment." *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017). The ALJ also relied on Claimant's other activities of daily living. But they also do not demonstrate that Claimant's left hip surgery was successful enough to allow the performance of full-time light exertional work. For example, Claimant

9

testified that he could mow the lawn, but he used a riding lawn mower and would not "be able to walk around to do it . . . ." [Dkt. 7-2 at 49.]

The ALJ did not provide any explanation how she concluded that the updated record of Claimant's functioning specifically demonstrated that he could perform light work if he had the particular sit/stand option that she assessed. To allow meaningful review, the ALJ must explain how dispositive issues are resolved. *See, e.g.*, *Scott v. Barnhart*, 297 F.3d 589, 596 (7th Cir. 2002). By regulation:

> Light work involves lifting no more than 20 pounds at a time with frequent[6] lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b). By contrast:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally[7] lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

*Id.* at 404.1567(a). The ALJ acknowledged that during a portion of the period under review Claimant was in the age category "closely approaching advanced age."[8] [Dkt. 7-2 at 22 (citation

---

[6] "'Frequent' means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10 (S.S.A. 1983), 1983 WL 31251, at *6.

[7] "'Occasionally' means occurring from very little up to one-third of the time. Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5.

[8] The SSA considers that a person who is closely approaching advanced age (age 50-54), along with severe impairments and limited work experience, may be seriously affected concerning his ability to adjust to other work. 20 C.F.R. § 404.1563(d).

omitted).]  The VE testified that Claimant did not have transferable skills from his past relevant work.  [Dkt. 7-2 at 55.]  If he were limited to sedentary exertional work, based on his age category, education, and work experience, the Medical-Vocational Guidelines would direct that he be found "[d]isabled."  See 20 C.F.R. § Pt. 404, Subpt. P., App. 2, Rule 201.14.  At least for a portion of the period at issue, the distinctions between light and sedentary work are material.

An error is harmless only if the Court can "predict[] with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record."  Spiva v. Astrue, 628 F.3d 346, 353 (7th Cir. 2010).  The Court cannot make the medical determination that the updated objective evidence of the Claimant's hip impairments would not have changed the consultants' assessments.  Neither the limited treatment evidence after Claimant's left hip replacement surgery, nor his testimony demonstrates that he was unequivocally capable of full-time work at the light exertional level if he had a sit/stand option.  Accordingly, remand is necessary for further consideration of Claimant's RFC.

### B. Significant Number of Jobs

Presuming for the sake of argument that the ALJ's RFC determination was supported, Claimant argues that the ALJ has not satisfied her burden at Step Five to show that there was a significant number of jobs that Claimant could perform even accepting that the VE testified that there were approximately 106,700 qualifying jobs in the national economy.  [Dkt. 15 at 20-24.]  For persuasive support, Claimant cites Sally S. v. Berryhill, 2019 WL 3335033, at *11 (N.D. Ind. Jul. 23, 2019) for the proposition that 120,350 jobs in the nation was found to not satisfy the ALJ's burden.  [Dkt. 15 at 21.]  She contends that the Court could find that a remand with instructions to award benefits is appropriate here.  [Dkt. 15 at 22.]  But in Angela L. v. Saul, 2021 WL 2843207, at *6 (S.D. Ind. July 7, 2021), the court concluded based on the specific facts of

11

the case that 53,200 jobs was a significant number. And Claimant acknowledges that the Seventh Circuit has not formally addressed what constitutes a significant number of jobs using only national numbers. [Dkt. 15 at 21.] The Seventh Circuit has also not provided precedential guidance about what reviewing courts should consider when evaluating whether a certain number of jobs is considered significant in a particular case. Accordingly, absent precedent and based on the Court having already determined that remand is necessary for further consideration of Claimant's RFC, the Court concludes that, rather than resolving the issue and awarding benefits based on this record, judicial restraint is appropriate. The Court declines to reach the merits of the issue and finds that remand for further proceedings is the appropriate disposition.

## IV. **CONCLUSION**

For the reasons explained above, the Court **REVERSES** the ALJ's decision denying Claimant benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above.

SO ORDERED.

Dated: 12 OCT 2022

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record
via email generated by the Court's ECF system.